## WYKOFF *et al.* v. W. H. WHEELER & CO. *et al.*

No. 5987.    Opinion Filed March 3, 1914.

(139 Pac. 319.)

**SCHOOLS AND SCHOOL DISTRICTS**—Contract for Books and Supplies — Filing Contract and Bond — Approval of Contract. Rev. Laws 1910, secs. 7709 and 7710, construed, and **held** to require the contract and bond of the successful bidder, duly executed as provided by law, to be filed with the State Board of Education within the time prescribed by the board in its advertisement for bids. Where such bond was presented to the Governor in due time, pursuant to Rev. Laws 1910, sec. 7712, and he refused to approve the same, whereupon it was filed with the Secretary of State without the approval of the Governor, and the board subsequent to that time prescribed by it in its advertisement for bids proceeds to advertise for other bids, such bond becomes a nullity, and the subsequent act of the Lieutenant Governor, while acting as Governor, in approving said bond, is also a nullity and will not constitute a performance of the condition precedent to the right of the board to approve the contract, and mandamus will not lie to compel the board so to do.

(Syllabus by the Court.)

Williams, J., dissenting.

*Error from District Court, Oklahoma County;*
*John J. Carney, Judge.*

Mandamus by W. H. Wheeler & Company, a corporation, and others, against Frank J. Wykoff and others. Judgment for plaintiffs, and defendants bring error. Reversed and remanded, with directions to quash writ.

See, also, 38 Okla. 771, 135 Pac. 399.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen. (*Stuart, Cruce & Cruce,* of counsel), for plaintiffs in error.

*Ledbetter, Stuart & Bell, E. G. McAdams,* and *Norman Haskell,* for defendants in error.

TURNER, J. From a judgment of the district court of Oklahoma county rendered and entered January 3, 1914, granting

a peremptory writ of mandamus at the suit of W. H. Wheeler & Co., a corporation, one of the defendants in error, commanding Robert H. Wilson, Superintendent of Public Instruction, Frank J. Wykoff, H. C. Potterf, B. H. Hester, F. B. Fite, W. H. Duncan, and A. W. Duff, and each of them, "as the State Board of Education of the State of Oklahoma, sitting as a text-book commission, that they convene not later than January 14, 1914, and, immediately upon convening, approve the contract dated July 29, 1912, between the state of Oklahoma and the plaintiff herein, a copy of which is attached to the petition of the plaintiff," the same being the contract in controversy in *Wykoff et al., State Board of Education, v. W. H. Wheeler & Co.,* 38 Okla. 771, 135 Pac. 399, all of said defendants save Wilson, who is made a defendant in error, bring the case here. They assign that the court erred in letting the writ go. The record in this case includes the facts in the "Wheeler case." In the "Wheeler case" the record, as here, discloses that the resolution of the board dated March 9, 1912, after setting July 15, 1912, as the time when, and its rooms in Oklahoma City as the place where, it would meet for the purpose of considering and adopting text-books, also provided for notice to all book companies of the action of the board, etc.; that on May 21, 1912, at another meeting of the board, the secretary was instructed to advertise for bids, which he did by notice dated May 1, 1912, duly published, which read:

"* * * All bids to furnish such text-books, records and supplies shall be sealed and deposited with R. H. Wilson, chairman of the State Board of Education, not later than July 15th, at nine o'clock a. m. A. D. 1912."

But that was not all of the notice. In addition thereto, both records disclose that said notice, after reciting chapter 102, art. 4, Comp. Laws 1909, as the act under which the board was proceeding, further read: "Contracts and bonds as provided under this act must be executed before the 15th day of August, 1912." This record further discloses that pursuant thereto and after their bid had been accepted and Wheeler & Co. had duly presented to the Governor their contract, with bond attached, with

the request that he sign the one and approve the other, which they failed to secure owing to his refusal to act, and after the board by resolution on August 2, 1913, approved the bond and signed the contract and ordered returned to Wheeler & Co. the certified checks deposited by them to secure the execution of such bond in event contracts were awarded them, which was afterwards done, both bond and contract were, by the board, filed in the office of Secretary of State, as required by law, and that thus matters stood throughout the current year until the appointment by the Governor of all these defendants, save Wilson, who remained a member of the board, as the successors of those members of the board who had acted thus far in the premises; that after these members were appointed and sought by resolution, dated May 27, 1913, to proceed to make a new adoption, the Wheeler suit was brought by this defendant in error to enjoin the board from so doing, upon the theory that such action was void as in excess of the powers of the board, and impaired the value of said contract upon which Wheeler & Company relied. The record further discloses that, pending said cause in this court, and while the Governor was absent from the state, and while the Lieutenant Governor was acting as Governor, he, while in the office of the Secretary of State, took from out the archives of that office said contract and bond filed as aforesaid some nine months theretofore, and wrote upon each, "Approved this August 2, 1913, J. J. McAlester, Acting Governor," and placed thereon the great seal of the state, and when thereafter in the Wheeler case, *supra,* we held that said contract was no contract, but was incomplete for the reason that the Governor had failed to approve the bond, this suit was brought.

Relying upon the approval of the Lieutenant Governor, as aforesaid, it is now contended, in effect, by Wheeler & Co., that such approval has been had; that the condition precedent to the right of the board to approve said contract has been performed; and that, as the board has refused to approve said contract when duly presented to it for that purpose, mandamus will lie. Not so. It would indeed be strange had the Legislature failed to prescribe a time within which this bond must be executed, as re-

quired ·by law, and be back in the hands of the board for its
further action looking to the completion of said contract. But
the Legislature made no such oversight. Recognizing the fact
that all human transactions must· have an end, the Legislature
provided that this bidder should, among other things, accompany
his bid with a certain sum of money as a deposit, and (Rev. Laws
1910, sec. 7709) "such deposit shall be forfeited to the state if
such bidder so depositing shall fail to make and execute the con-
tract and bond provided herein within such time as the commis-
sion may require, which time shall be specified in the notice ad-
vertised." By "bond provided herein" is meant bond prescribed
by the act or section 7712, Rev. Laws 1910, which required the
bond "to be approved by the Governor." And when pursuant
thereto the board in its notice of May 1, 1912, required that
"contracts and bonds provided under this act must be executed
before the 15th day of August, 1912," such was notice to the
successful bidder that the transaction must be closed within that
time, so far as he was concerned, by the bidder furnishing the
board a good and sufficient bond approved by the Governor. To
place any other construction on said section, and to hold that
the words, "shall fail to make and execute the contract and bond
provided herein," required the bidder to do only all the law re-
quired of him towards their execution, would be to give that
part of the section quoted a meaning which, in the event he should
execute a bond within the time prescribed and the Governor
should fail to approve it, would permit the transaction to halt
there for an indefinite time. As evidence that such is the intent
of the act with reference to the time and manner of filing his
bond, Rev. Laws 1910 further provided (section 7710):

"When any person, firm or corporation has been awarded
a contract and the contract and bond required has been filed with
the commission, it shall make an order on the Treasurer of the
State, reciting such fact, and thereupon the treasurer shall re-
turn the deposit of such bidder; but if any successful bidder shall
fail to make the contract and bond as heretofore provided, the
treasurer shall place the deposit of such bidder in the state treas-
ury to the credit of the available school fund, and the commis-
sion shall readvertise for other bids."

"As heretofore provided" means, in like or the same manner theretofore provided, and, as "manner" is here intended to include the element of time, "as heretofore provided" means, within the time and in the manner heretofore provided. *Porter et al. v. Brook,* 21 Okla. 885, 97 Pac. 645.

To be sure, the bond in question (together with the contract) was filed before August 15, 1912; but, the bond being without the approval of the Governor, neither contract nor bond can be said to have been executed as required by law within that time as contemplated by the statute, and for that reason were without force and effect. And as the bond was not executed in the manner and filed within the time specified in the advertisement, the board had the right to re-advertise for other bids, which it did.

It follows that the subsequent approval of the bond by the Lieutenant Governor amounted to nothing, and hence was not such approval of the bond by the Governor as to constitute a performance of the condition precedent to the right of the board to approve the contract, and that mandamus will not lie.

In so construing these sections we are not unmindful that it might be said we impliedly hold that the successful bidder would forfeit his deposit, if, without fault of his own, the Governor should refuse to act upon his bond, as he did. Not so. That question is not before us, and for that reason, and for the further reason that the board returned the deposit and the same was accepted without protest, upon this point we express no opinion.

However, it might be well to say in passing that where, as here, the legislative intent is clear, we are not at liberty to look to the effect of the law. It is only when all other means fail in ascertaining that intent that we may look to such effect. *Dudley v. Reynolds,* 1 Kan. 285. As the action, or rather the failure to act, of the Governor upon this bond when presented was probably not within the contemplation of the framers of this statute, the argument of hardship and inconvenience does not affect us, for, as stated in Lewis' Sutherland Stat. Const. p. 915:

"The argument of inconvenience is very strong when the statute is ambiguous and fairly open to two constructions. Then the argument of inconvenience, like the argument of absurdity,

may be used with great force; but, when the construction is clear beyond controversy, it is no answer to say that there are some consequences which will cause inconvenience which were probably not contemplated by the framers."

Neither are we unmindful that this point was not raised in the trial court. But that does not affect our opinion, for the reason that, with the facts before him and this statute within his knowledge, the trial court, when his discretion was invoked to issue the writ, could properly have raised it *sua sponte* and, not having done so, abused his discretion in issuing the writ.

For that reason the judgment is reversed, and the cause remanded, with directions to quash the writ.

KANE and LOOFBOURROW, JJ., concur. HAYES, C. J., concurs in the conclusion. WILLIAMS, J., dissents.